IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | CRIMINAL ACTION NO. |
| v. | ) | 2:25cr237-MHT |
| | ) | (WO) |
| NA'DERIOUS JACKSON | ) | |

OPINION

Recently, the United States Sentencing Commission amended United States Sentencing Guideline (U.S.S.G.) § 2D1.1 to address its concern that in certain drug cases where sentences are based on drug amounts, courts were failing to reduce, adequately, sentences for defendants whose *primary functions or roles* in the offenses were *low level* in nature. *See* U.S.S.G., App. C, Amend. 833 (2025).

In this case, defendant Na'Derious Jackson pleaded guilty to three counts of possession with intent to distribute a controlled substance, all in violation of 18 U.S.C. § 841(a)(1). At sentencing, he was facing a Sentencing Guideline imprisonment range, as calculated

by the United States Probation Officer and agreed to by the government, of 210 to 262 months. Jackson claimed this range failed to adequately consider newly amended Guideline 2D1.1. The court now issues this opinion to explain why it agreed, in part, with Jackson.

## I. FACTUAL BACKGROUND

The details of the underlying offense, as laid out in the presentence investigation report (PSR), are as follows.

In the early morning hours of a day in mid-March 2024, an officer at the Ventress facility of the Alabama Department of Corrections (ADOC) saw Jackson running from the prison fence into the woods. The officer found five packages wrapped in tape on the ground near where he had seen Jackson. Inside the packages were a range of drugs, including methamphetamine, marijuana, amphetamines, and

morphine pills, along with knives, cellphones, charging cords and cables, and rolling papers.

About a half hour after Jackson had been spotted at Ventress, officers stopped a car nearby. The driver told the officers that he was paid $ 100 to drop off and pick up a man, known only to him as "DJ," near Ventress. Law enforcement later confirmed that "DJ" was Na'Derious Jackson. A passenger, who was the girlfriend of the driver, told the police that they had picked up "DJ" in Birmingham and dropped him off in a wooded area close to Ventress. They waited for him at a gas station, but, after he failed to show up, they left. Soon after, they were stopped by the police.

Around the same time as the traffic stop, officers found and questioned Jackson. He told them that he was called by an unknown person and offered $ 4,000 to drop off a backpack of contraband at Ventress. He also said that the backpack was given to him by someone else and

admitted to throwing its contents on the grounds of the facility. When he went back to the road to leave, he saw police and ran into the woods.

Later, law enforcement ran Jackson's cellphone records and found a text-message thread between him and another person dating back to late February 2024, about three weeks before the Ventress incident. The messages were about coordinating the delivery of contraband to a prison. In them, Jackson and the other person discussed buying knives and a backpack to fit "all 10 bombs," seemingly referring to packages of drugs. PSR (Doc. 51) ¶ 9. The messages also confirmed that the knives would be used for violence in prison, and suggested that Jackson stood to gain at least $ 2,500 for his role in the offense. Jackson and the other person also attempted to arrange the delivery of the drugs, weapons, and cellphones to the prison on multiple dates before they ultimately settled on the March 2024 date.

## II. PROCEDURAL BACKGROUND

The probation officer determined, based on the converted-drug weight, that Jackson's base offense level was 34. She then added a two-level enhancement under U.S.S.G. § 2D1.1(b)(4), because the 'object of the offense' was the distribution of controlled substances in a prison. She also applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), the dangerous-weapon enhancement, because he had four knives in his backpack during the offense. These enhancements, combined with a three-level decrease in the offense level under U.S.S.G. § 3E1.1(a) for Jackson's acceptance of responsibility for the offense, resulted in a total offense level of 35.

The following chart summarizes these calculations.

| Offense Levels | Levels Assessed |
|---|---|
| Base offense level (based on converted drug weight) | 34 |
| Distribution of controlled substance in prison enhancement | +2 |

| | |
|---|---|
| Dangerous-weapon enhancement | +2 |
| Adjusted offense level | 38 |
| Acceptance of responsibility | -3 |
| Total offense level | 35 |

Based on a total offense level of 35 and a criminal history category of III, the probation officer calculated Jackson's Guideline sentencing range as 210 to 262 months and recommended a sentence of 210 months on counts one and two and 60 months on count three (the statutory maximum), all to run concurrently. The government agreed with these calculations and recommendations.

## III. DISCUSSION

Jackson objected to the presentence report. He argued that, in light of a recent amendment to the Sentencing Guidelines, he should have received a reduction in offense level under the guideline providing for a mitigating-role adjustment, U.S.S.G. § 3B1.2,

**because he played a 'minor' or 'minimal' role in the offense.**

**A. Application of Guideline 3B1.2**

**The government, in concurrence with the probation officer's recommendation, maintained that Jackson was not eligible for a mitigating-role adjustment under Guideline 3B1.2.**

**The guideline provides that, based on the "defendant's role in the offense," U.S.S.G. § 3B1.2, he may receive a four-level reduction if he was a "minimal participant in any criminal activity," *id.* at (a), or a two-level reduction if he was a "minor participant in any criminal activity," *id.* at (b). Minimal participants are those who are "plainly among the least culpable of those involved in the conduct of a group." *Id.*, cmt. n.4 (2025). Minor participants are those who are "less culpable than most other participants in the criminal**

activity, but whose role could not be described as minimal." *Id.*, cmt. n.5. For defendants whose participation falls in between a minimal and minor role, they may receive a three-level downward adjustment. *See* U.S.S.G § 3B1.2. [1]

Assessing whether a mitigating-role adjustment should be applied is a fact-based determination. Some factors to consider include: the degree to which the

---

1. Guideline 3B1.2 provides:

"Based on the defendant's role in the offense, decrease the offense level as follows:

> (a) If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
>
> (b) If the defendant was a minor participant in any criminal activity, decrease by 2 levels.

In cases falling between (a) and (b), decrease by 3 levels."

U.S.S.G. § 3B1.2.

**defendant understood the scope and structure of the offense; the degree to which the defendant participated in planning the offense; whether the defendant exercised decision-making authority; how much the defendant stood to benefit; and the general nature and extent of the acts the defendant performed in relation to the offense. *See id.* at cmt. n.3.**

**Here, the government conceded that Jackson was acting at the direction of another individual. But it contended that, although he was not the leader of the offense, the totality of his actions went above the minor or minimal participation level that would warrant a mitigating-role adjustment under Guideline 3B1.2. In support of its position, the government pointed out that, in addition to serving as a courier, he also shopped for some of the contraband and coordinated the delivery time by text messaging, all of which went beyond merely acting as a**

courier. It also argued that he played an essential role.

B. Recent Amendment to Guideline 2D1.1

However, the government did not adequately consider that, in determining whether a *mitigating-role adjustment* is appropriate for a *drug-related offense*, Guideline 3B1.2 (the mitigating-role guideline) must be read in concert with Guideline 2D1.1 (the drug-related offense guideline). *See* U.S.S.G. § 3B1.2, cmt. n.6 (2025).

After conducting a thorough study, the United States Sentencing Commission recently amended Guideline 2D1.1, to "address the inconsistent application of § 3B1.2 in § 2D1.1 cases," "encourage broader use of § 3B1.2 in these cases," and "expand[] the circumstances in which an adjustment under § 3B1.2 is warranted in § 2D1.1 cases." U.S.S.G., App. C, Amend. 833 (2025). Animating

these changes was the Commission's concern that the Guidelines, as previously written, did not adequately account for the "lower culpability" of those who performed low-level roles in drug-related offenses. *Id.*

For this reason, with amendment 833, which went into effect on November 1, 2025, the Commission added a special instruction to Guideline 2D1.1 that "a [mitigating-role] adjustment is generally warranted if the defendant's 'primary function' in the offense was performing a low-level trafficking function." *Id.*

### C. Application of Guideline 2D1.1 in Jackson's Case

With this in mind, the court then returned to Jackson's eligibility for a mitigating-role adjustment.

Two subparts of Guideline 2D1.1 were relevant: subpart (e)(2)(B) and subpart (a)(5).

1. *Subpart (e)(2)(B)*

Subpart (e)(2)(B) of Guideline 2D1.1 now instructs that, in drug-related offenses, a Guideline 3B1.2 mitigating-role adjustment is "generally warranted if the defendant's primary role in the offense was performing a low-level trafficking function." U.S.S.G. § 2D1.1(e)(2)(B).[2] The guideline then provides, in

---

2. Because subpart (e)(2) of Guideline 2D1.1 is rather complex, its relevant parts are reproduced in full as follows:

> "(e) Special Instructions
>
> ...
>
> (2) Application of § 3B1.2 (Mitigating Role) to § 2D1.1 Cases
>
> > (A) Determine whether an adjustment under § 3B1.2 (Mitigating Role) applies.
> >
> > (B) In addition to the circumstances identified in § 3B1.2, an adjustment under § 3B1.2 is generally warranted if the defendant's primary function in the offense was performing a low-level trafficking function.

(i) An adjustment under § 3B1.2(a) is generally warranted if the defendant's primary function in the offense was plainly among the lowest level of drug trafficking functions, such as serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout; or

(ii) an adjustment under § 3B1.2(b) is generally warranted if the defendant's primary function in the offense was performing another low-level trafficking function, such as distributing controlled substances in user level quantities for little or no monetary compensation or with a primary motivation other than profit (e.g., the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense).

For purposes of subsection (e)(2)(B), the provisions of § 3B1.2 apply in determining whether a mitigating role adjustment is warranted, except that the adjustment shall apply regardless of whether the offense involved other participants in addition to the defendant, and regardless of whether the defendant was substantially less culpable than the average participant in the criminal

parallel with Guideline 3B1.2, that, "if the defendant's primary function in the offense was plainly among the *lowest level* of drug trafficking functions," then a four-level adjustment under Guideline 3B1.2(a) would generally be warranted. *Id.* at (B)(i) (emphasis added). Further, "if the defendant's primary function in the offense was performing another *low-level* trafficking function," then a two-level adjustment under Guideline

> activity. The extent of the adjustment shall be based on the totality of the circumstances and involves a determination that is heavily dependent upon the facts of the particular case.
>
> (C) The mitigating role provisions at subsection (a)(5) and the 2-level reduction at subsection (b)(17) apply regardless of whether the defendant receives the required adjustment from § 3B1.2 (Mitigating Role) by direct application of § 3B1.2 or by use of the special instruction in subsection (e)(2)(B)."

U.S.S.G. § 2D1.1(e)(2).

**3B1.2(b) would generally be warranted. *Id.* at (B)(ii) (emphasis added). The "lowest level" includes "serving as a courier, running errands, sending or receiving phone calls or messages, or acting as a lookout." *Id.* at (B)(i). Otherwise, the mere "low level" includes "distributing controlled substances in user level quantities for little or no monetary compensation or with a primary motivation other than profit (*e.g.*, the defendant was otherwise unlikely to commit such an offense and was motivated by an intimate or familial relationship, or by threats or fear to commit the offense)." *Id.* at (B)(ii).**

**Here, Jackson argued that he was entitled to the four-level mitigating-role adjustment because his role in this offense was "among the lowest level of drug trafficking functions." *Id.* at (B)(i). He highlighted that he primarily served as a courier and ran errands at**

the overall direction of another; he was not in charge of the trafficking offense.

The government contended that his actions went above that of a mere courier because he knew of the scope of the trafficking scheme, shopped for some of the contraband, was involved in scheduling the attempted delivery, and performed an essential function.

It is true that Jackson had several roles in the offense. However, Guideline 2D1.1 states that a mitigating-role adjustment is "generally warranted," for a defendant whose "primary function" was performing a low-level trafficking role. *Id.* The guideline does not require that the low-level role be the *only* role, but rather that it be the *primary* one. Thus, that a defendant had other roles is not necessarily determinative. Here, the court was convinced, and so found, that, while Jackson had additional duties, his *primary function* was that of a courier. As the courier, he took on all of the

risk by possessing the drugs and being the one to attempt the delivery. The court was persuaded by his argument that his assumption of the risk of delivery suggests that he was actually a more expendable member of the trafficking scheme. Other members of the operation felt comfortable giving him the delivery role and risking his being caught. He also stood to gain between only $ 2,500 to $ 4,000 for his role, a relatively less substantial sum for the lucrative drug trafficking scene and for the amount of drugs involved in this case. And his "essential role ... in the criminal activity is not determinative" of whether his role was primarily low level. U.S.S.G. § 3B1.2, cmt. n.3(C).

However, having decided that Jackson's primary role was that of a courier, the court was then faced with the question of whether to give him the full four levels for being primarily a courier. Under Guideline 2D1.1, four-level decreases are "generally warranted" for

defendants whose primary functions were serving as couriers since that is "plainly among the lowest level of drug trafficking functions." U.S.S.G. § 2D1.1(e)(2)(B)(i). However, the guideline also makes clear that the four-level adjustment is "generally warranted"; it does not say it is always warranted. The determination should be based on "the totality of the circumstances" and thus is "heavily dependent on the facts of the case." *Id.* Admittedly, determining the appropriate adjustment--whether four or two levels or the 'in-between' three levels under Guideline 3B1.2--was a close-call here, in particular, whether it should be two or three. The court, persuaded in part by the government's arguments, felt that, although Jackson's primary function was serving as a courier, he was significantly involved in the planning of the offense. He communicated extensively to coordinate the attempted delivery; he selected and purchased the knives to be

delivered alongside the drugs; and he exercised a relatively significant degree of decision-making authority throughout the offense. Ultimately, the court felt that, based on all the facts at hand, Jackson's function in the offense, albeit low level, was not the lowest level and was more comparable to that of a defendant who received two levels. Accordingly, the court gave Jackson a two-level mitigating-role decrease.

2. *Subpart (a)(5)*

Guideline 2D1.1 benefits defendants by allowing for their sentences to be reduced, not only through a mitigating-role adjustment in accordance with Guideline 3B1.2 and the special instruction found at subpart (e)(2) of Guideline 2D1.1 as discussed above, but also through

**an additional reduction in the *base offense level* under subpart (a)(5) of Guideline 2D1.1.[3]**

---

**3. Subpart (a)(5) of Guideline 2D1.1 provides that, "if (A) the defendant receives an adjustment under § 3B1.2 (Mitigating Role); and (B) the base offense level under subsection (c) is (i) level 32, decrease by 2 levels; (ii) level 34, decrease by 3 levels; or (iii) above level 34, decrease to level 32. If the resulting offense level is greater than level 30 and the defendant receives the 4-level reduction in § 3B1.2(a), decrease to level 30." U.S.S.G § 2D1.1(a)(5).**

**The Commission made clear that this decrease in the base offense level should be applied *in addition to* the actual mitigating role adjustment. *See* U.S.S.G. § 3B1.2, cmt. n.6.**

**It is also noteworthy that subpart (a)(5) updated the base offense level caps for defendants who received mitigating-role adjustments. As the Commission noted, it "maintains the approach of graduated decreases depending on the base offense level but amends § 2D1.1(a)(5) in two ways. First, it sets a mitigating role *cap* at level 32 if the defendant receives an adjustment under § 3B1.2 and has a base offense level above level 34. Second, if the defendant has a resulting offense level greater than level 30 and receives a 4-level adjustment under § 3B1.2(a), then a mitigating role *cap* of level 30 applies." U.S.S.G., App. C, Amend. 833 (2025) (emphasis added).**

Subpart (a)(5) provides that, if a defendant receives an adjustment under Guideline 3B1.2 and his base offense level is 34, his base defense level may be further decreased by three levels. Because Jackson has satisfied both of these requirements, his base defense level was reduced by three levels, from 34 to 31.

## IV. SENTENCE CALCULATION

In sum, defendants who qualify for a Guideline 3Bl.2 mitigating-role adjustment in drug-trafficking related cases may enjoy a sort of double benefit under amended Guideline 2D1.1: under subpart (e)(2), they may receive levels off of their *total offense level* under Guideline 3B1.2 *and*, under subpart (a)(5), they may also receive additional levels off of their *base offense level*.

The court then applied these benefits to Jackson. When determining his sentence, the court started with a base offense level of 34, as calculated by the probation

**officer. Under subpart (a)(5), because Jackson's base offense level was 34, and because he was entitled to receive a mitigating-role adjustment, the court decreased the base offense level by three. The new base offense level was 31, rather than 34 as calculated originally.**

**Four levels were then added for relevant enhancements;[4] the offense level was decreased by two**

---

**4. As stated earlier, the probation officer applied a two-level enhancement under U.S.S.G. § 2D1.1(b)(1), the dangerous-weapon enhancement, because Jackson had four knives in his backpack during the offense. Jackson objected to this two-level enhancement. As explained orally at sentencing, after considering the parties' arguments and evidence, the court agreed with the application of the dangerous-weapon enhancement because the connection between the knives and the drugs that Jackson possessed during the offense was not "clearly improbable." *United States v. Graham*, 123 F.4th 1197, 1288 (11th Cir. 2024) (stating that the dangerous-weapon enhancement should be applied when a dangerous weapon is present during an offense, unless it is "clearly improbable" that the weapon was "connected to" the offense)*; see also* U.S.S.G. § 2D1.1, cmt. n.11(A) (2025). In prison, where possessing a firearm is infinitely more difficult than in the free world, incarcerated people often use knives as their weapons of choice, or rather weapons of circumstance. It is,**

levels due to the mitigating-role adjustment ; and, finally, the offense level was decreased by an additional three levels for acceptance of responsibility; . The total offense level was therefore 30. This, combined with Jackson's criminal history category of III, resulted in a Guideline sentencing range of 121-151 months.

The following chart summarizes the court's calculations.

| Offense Levels | Levels Assessed |
|---|---|
| Base offense level (based on converted drug weight) | 34 |
| Reduction in base offense level | -3 |
| New base offense level | 31 |

---

therefore, not clearly improbable that, if the contraband in Jackson's possession had successfully entered the prison, the knives would have been used to protect the drugs or otherwise assist with their distribution, or to enforce the collection of drug-related payments. On the contrary, the court believes it is highly likely that the knives would have been used this way. Accordingly, the probation officer correctly applied the two-level dangerous-weapon enhancement.

| | |
|---|---|
| Distribution of controlled substance in prison enhancement | +2 |
| Dangerous-weapon enhancement | +2 |
| Mitigating-role adjustment | -2 |
| Adjusted offense level | 33 |
| Acceptance of responsibility | -3 |
| Total offense level | 30 |

To complete the record, the court notes Jackson asked for variance on two grounds: the Guidelines' overemphasis on drug purity and quantity, see *United States v. Johnson*, 379 F. Supp. 3d 1213, 1229 (M.D. Ala. 2019) (Thompson, J.) (explaining this court's policy disagreement with the "excessive significance that the drug-trafficking guidelines assign" to the quantity and purity of drugs because "quantity and purity are unreliable proxies for the offender's role in the crime and his culpability"); and his mental-health diagnoses and exposure to multiple adverse childhood experiences (ACEs), see *United States v. Carter*, 506 F. Supp. 3d 1204, 1209-10 (M.D. Ala. 2020) (Thompson, J.) (explaining that "research on ACEs shows that these experiences

powerfully affect children's brain development," which in turn can make it difficult to modulate their emotions, constrain their impulses, and perform other executive functions in childhood and later as adults).

The court believed he was entitled to a multi-level reduction for these reasons. However, because he was subject to a statutory mandatory minimum sentence on the methamphetamine charge, the court varied down from 121 months to only 120 months of imprisonment, the mandatory minimum.

DONE, this the 8th day of September, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE